UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re:<br><br>VATCHE N. MANOUKIAN,<br>      Debtor<br><br><br>ROBERT L. BENJAMIN<br>      Plaintiff<br><br>v.<br><br>VATCHE N. MANOUKIAN,<br>      Defendant | CASE NO. 17-11747-BAH<br><br>ADVERSARY PROCEEDING<br>No. 18-01022-BAH |

**SECOND AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C § 523**

**PARTIES**

1.  The Plaintiff, Robert L. Benjamin, is an individual with a residential address of 400 Towerside Terrace, #2306, Miami Florida, 33138. Mr. Benjamin is eighty-three (83) years old.

2.  The Defendant, Vatche N. Manoukian, upon information and belief, is an individual with a residential address of 18 Farley Road, Hollis, NH 03049.

3.  The Defendant filed a Chapter 7 Bankruptcy Petition on December 19, 2017.

4.  The Plaintiff is a creditor in this bankruptcy proceeding.

**JURISDICTION, VENUE AND STANDING**

5.  This Court has jurisdiction over this proceeding pursuant to 11 U.S.C. § 523 and 28 U.S.C. §§ 157 and 1334.

6. Venue is proper in the District pursuant to 28 U.S.C. § 1409 because the Defendant's bankruptcy petition is pending in this District.

7. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2).

8. Plaintiff consents to the entry of final judgment by this Court.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

9. The allegations contained in paragraphs 1 through 8 are re-alleged and incorporated herein by reference.

10. Defendant Vatche Manoukian was a business associate or partner in Riley More and More Enterprises, LLC, 176 Webster Street, LLC, N.E. All Star Consulting LLC, Mile High Real Estate, LLC, and forty plus other business entities in the state of New Hampshire, all of which were formed to facilitate the purchasing and developing of real estate properties.

11. Defendant both individually and through his entities received loans through commercial and private individuals to finance his purchases and construction costs.

12. Between 2004 and 2006, Defendant and his partner, Linda Haytayan, together and individually traveled to Florida approximately twenty (20) times, visiting Plaintiff for the specific purpose of solicitation, entering into agreements, and receiving funds.

13. In 2004, Defendant and Haytayan asked Plaintiff whether he would be interested in a business arrangement in which Plaintiff and DLC Services Corp (a company in which Plaintiff was the sole shareholder) would lend sums of money to Defendant and Haytayan through an entity known as Riley, More & More Enterprises, LLC. Hereinafter "RMM."

14. Defendant told Plaintiff that RMM owned building lots and would sell them to an individual named Desantis and his entities for $100,000 each and that Desantis would be

2

financing the purchase with 70% commercial financing and 30% by a mortgage held by RMM with a note.

15. Plaintiff intended that his loans would, in part, help RMM fund the 30% mortgages.

16. Plaintiff later learned that Defendant falsely represented that RMM owned the lots when Defendant in fact owned the properties himself.

17. Defendant subsequently sold his ownership in said properties to an entity known as 176 Webster Street, LLC instead of to Desantis. Defendant was a member of said LLC.

18. Had Defendant sold the properties to Desantis financed with 70% commercial financing, he would have had the money to pay back Plaintiff.

19. Defendant used Plaintiff's money to acquire various properties for himself and his LLC's instead of using the money to finance the 30% mortgages to Desantis.

20. If Defendant had provided the 30% mortgages, there would have been collateral to secure the transactions.

21. Between the periods of 2004 and 2007, Plaintiff lent sums in excess of $1,000,000 to Defendant, his partner and his entities.

22. Defendant was not repaid and did not have the promised collateral from which he should have been able to recoup his losses.

23. In August 2008, Plaintiff filed a federal complaint (originally in the Southern District of Florida, removed to the District of New Hampshire) alleging that Defendant committed fraud in the inducement to make loans, committed fraud generally, and for other relief.  Docket No. 1:08-cv-00422-SM.

# COUNT I

## False Pretenses, False Representation, Actual Fraud

### The Florida Statements

### 11 U.S.C §523(a)(2)(A)

24. The allegations contained in Paragraphs 1 through 23 are re-alleged and incorporated herein by reference.

25. Plaintiff's claim arises from debt the Defendant obtained by false pretenses, false representation and/or actual fraud and therefore is a non-dischargeable debt pursuant to 11 U.S.C. §523(a)(2)(A).

26. In particular, Defendant knowingly made false representations or made representations with reckless disregard for the truth when he claimed to own properties in the name of an LLC, which he was selling to Desantis and Desantis' entities for $100,000 each, financed by 70% commercial financing and a 30% mortgage from the entity selling the property.

27. Defendant either knew that these statements were false or recklessly disregarded the truth in making those statements as in reality, Defendant owned the properties in his own name and was selling the properties to an entity of which he was a member.

28. The money was not used to provide a 30% mortgage to a third party with collateral.

29. Defendant intended to deceive Plaintiff as he made those false statements with the intent of obtaining Plaintiff's money.

30. Defendant intended to induce Plaintiff to rely on these false statements in deciding whether to loan Defendant money.

31. Plaintiff actually relied upon the misrepresentations and loaned Defendant at least $1,000,000.

32. Plaintiff's reliance was justifiable.

33. Plaintiff was caused damages in that he was unable to collect his money.

34. Plaintiff admits that his damages are limited to the amount he agreed to settle this claim for in the United States District Court, District of New Hampshire.

35. Accordingly, as Defendant's debt arises from him making false representations, using false pretenses and committing actual fraud, his debt is non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

## COUNT II

### False Pretenses, False Representation, Actual Fraud

### The Settlement Agreement

### 11 U.S.C §523(a)(2)(A)

36. The allegations contained in Paragraphs 1 through 35 are re-alleged and incorporated herein by reference.

37. As part of the Federal District Court lawsuit, the Parties conducted Magistrate led mediation and entered into a settlement agreement. *See* Ex. A.

38. In this mediation, Defendant knowingly made false statements or made false statements in reckless disregard of the truth to deceive Plaintiff into relying on these false statements.

39. As part of settlement negotiations, Defendant represented that he and his partner would grant to Plaintiff "a first mortgage on certain unencumbered, approved, and unbuilt

condominium units, ten in total, and twenty unbuilt and encumbered units owned by Southfield Village Development." *Id.*

40. This promise became an integral clause in the settlement agreement.

41. Further, Defendant promised that he, his partner and Southfield Village Development would execute a Note and mortgage in a sum equal to all payments due and payable to Plaintiff. *Id.*

42. This also became a key provision of the settlement agreement.

43. In particular, the settlement agreement provided that Plaintiff and his partner would pay Defendant $500,000 in three installments, $300,000 by 9/1/11, $100,000 by 9/1/12 and $100,000 by 9/1/13. Further, they would pay Plaintiff $5,000 by 6/30/10 and $1500 per month thereafter until "the entire sums due and payable under this order of settlement have been tendered to and received by [Plaintiff]."

44. Defendant made representations that he would be selling lots that were under contract from which he would make these payments.

45. All of the representations Defendant made regarding the collateral for this agreement were false.

46. Defendant never provided any of the Notes or mortgages that he promised.

47. In fact, he had no unencumbered properties from which he could have provided such collateral.

48. As an example, one of the properties promised (known as the Groton property) had unpaid taxes for 2006, 2007 and 2008 in excess of $50,000 and in addition to the purchase money mortgage holder, there were two other judgment liens that would take priority over any security granted to Plaintiff.

49. Accordingly, Defendant falsely represented that he had unencumbered properties from which he could grant good collateral and security.

50. Defendant likewise never made any of the lump sum payments.

51. Rather the lots he claimed to have under contract were not.

52. Plaintiff justifiably relied on Defendant's false statements when deciding to enter into the settlement agreement.

53. Plaintiff further justifiably relied on Defendant's false statements when he filed a stipulation of dismissal of the federal court matter.

54. As a direct and proximate result of the false statements and fraud perpetrated by Defendant, Plaintiff suffered damages.

55. Plaintiff was damaged by Defendant's false statements as he had none of the promised collateral with which to enforce the terms of the agreement.

## COUNT III

### False Pretenses, False Representation, Actual Fraud

### The Periodic Payment Hearings

### 11 U.S.C §523(a)(2)(A)

56. The allegations contained in Paragraphs 1 through 55 are re-alleged and incorporated herein by reference.

57. In order to attempt to recover money from the above fraud, Plaintiff filed an action with the Hillsborough County Superior Court Southern District, Docket No. 226-2013-CV-00025.

58. After receiving a judgment in that Court against Defendant, Plaintiff requested periodic payments.

59. As part of that periodic payment process, Defendant made false representations or false representations with disregard to the truth regarding his financial position that led Plaintiff to request, and the court to order, a lower periodic payment than it otherwise would have.

60. Defendant alleged to have no income aside from his social security check. *See* Ex. B, financial affidavit.

61. At the same time, Defendant was involved in another case, Manoukian v. Pennymac Loan Services, LLC, 226-2015-CV-00616 that resulted in an appeal, Case No. 2016-0035.

62. In the Pennymac case, Defendant made submissions to the court that he had over $20,000 in monthly income (and did not deny those submissions in court), including rental income. *See* Ex. C, Supplement to Plaintiff's Motion For Contempt, with internal exhibits labeled Exhibits D-H in this filing.

63. Defendant stated to the court in the Pennymac case that "business is good, economy is good" and that he had the ability to make a $283,000 down payment.

64. Defendant attempted a loan modification in January 2014 on his 6 Powers Road property.

65. Those documents were not produced in the periodic payment matter despite interrogatories requesting such records.

66. Defendant did not go through with the loan modification and thus, still should have had the available income and the lump sum payment to put toward his debt in this case.

67.     Defendant made fraudulent representations, fraudulent omissions and/or representations/omissions with reckless disregard of the truth, to Plaintiff when he stated his income in the periodic payment matter and when he did not provide the financial statements provided in his other matter, despite a discovery request requiring him to.

68.     Plaintiff justifiable relied on those false representations when it proceeded with a periodic payment hearing and sought $1500/month from Defendant.

69.     Had Plaintiff been aware of Defendant's real financial picture, he would have sought a lump sum payment or a larger periodic payment.

70.     Defendant now claims to not have that money.

71.     Plaintiff's reliance on Defendant's misrepresentations were justifiable.

72.     Plaintiff was damaged as he did not receive a larger lump sum payment at the time that Defendant had the ability to pay it.  If he did, this debt would either no longer exist or be substantially lower.

73.     Accordingly, as Defendant's debt arises from him making false representations, using false pretenses and committing actual fraud, his debt is non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

## COUNT IV
## 11 U.S.C. §523 (a)(4)
### Embezzlement

74.     The allegations contained in Paragraphs 1 through 73 are re-alleged and incorporated herein by reference.

75.     While Plaintiff maintains that he loaned money to Defendant, Defendant has previously raised the defense that the money Plaintiff gave him was for him to invest, not a loan.

76. Regardless, as addressed above, the money was given to Defendant for specific purposes – to enable RMM to sell properties to Desantis with 70% commercial financing and a 30% mortgage from RMM.

77. Defendant, without Plaintiff's consent, used the money for his own personal gain instead.

78. As previously stated, Plaintiff used the money to purchase property in the name of an LLC of which Defendant was a member.

79. Defendant did not provide the promised collateral, ie: a mortgage between him and Desantis.

80. On one occasion, Plaintiff ran into Defendant in a coffee shop in Nashua, New Hampshire. When Plaintiff inquired about the loans, Defendant stated that he used $125,000 of the money Defendant had loaned him to buy his daughter Jessica a Mercedes Benz.

81. Defendant did not have Plaintiff's permission to spend the loaned money on his own interests.

82. This is particularly so if the Court believes Defendant's claim that the money loaned was actually given to Defendant to invest.

83. Defendant did not invest the money but used it to purchase properties that benefitted himself, his companies and in the case of the car, his daughter.

84. Plaintiff's money was rightfully in the possession of Defendant.

85. Defendant appropriated such money to use for uses other than the reasons for which Plaintiff lent him the money (or if Defendant is to be believed, gave him the money to invest.)

86. These circumstances indicate fraud.

87. A fiduciary relationship need not exist for debt to be non-dischargeable for embezzlement under Section 523(a)(4).

88. As Defendant embezzled Plaintiff's money, his debt is non-dischargeable under Section 523(a)(4).

## COUNT V

## 11 U.S.C. §523(a)6

## Willful and Malicious Injury

89. The allegations contained in Paragraphs 1 through 88 are re-alleged and incorporated herein by reference.

90. The allegations contained in the above four counts demonstrate that Plaintiff suffered monetary injuries.

91. The monetary injuries were the result of Defendant's actions.

92. Defendant intended to cause the injuries or there was a substantial certainty the injuries would result from Defendant's acts.

93. All of the above pleaded facts demonstrate that Defendant had no intention of ever repaying Plaintiff.

94. Defendant had no just cause or excuse for his actions that resulted in these monetary injuries.

95. Defendant willfully and maliciously injured Plaintiff.

96. As plaintiff's claim arises from debt the Defendant obtained through willful and malicious injury of the Plaintiff it is non-dischargeable debt pursuant to 11 U.S.C. §523(a)(6).

WHEREFORE, The Plaintiff respectfully requests that this Honorable Court:

A. Determine that Defendant's debt to Plaintiff, including attorneys' fees, costs and expenses, arises from Defendant's false pretenses, false representations, and/or actual fraud and is a nondischargeable debt of Defendant pursuant to 11 U.S.C. §523(a)(2)(A);

B. Determine that Defendant's debt to Plaintiff, including attorneys' fees, costs and expenses, is a nondischargeable debt of Defendant pursuant to 11 U.S.C. § 523(a)(6);

C. Determine that Defendant's debt to Plaintiff, including attorneys' fees, costs and expenses, is a nondischargeable debt of Defendant pursuant to 11. U.S.C. §523(a)(4); and

D. Grant such other relief as justice requires.

                Respectfully submitted,

                ROBERT L. BENJAMIN

                By and through his attorneys,
                HAGE HODES, P.A.

Dated: August 17, 2018      By:   /s/ Kathleen A. Davidson
                Kathleen A. Davidson (BNH #07300)
                Hage Hodes, P.A.
                1855 Elm Street
                Manchester, NH  03104
                (603) 668-2222
                kdavidson@hagehodes.com

## CERTIFICATE OF SERVICE

I, Kathleen A. Davidson, forwarded the foregoing Second Amended Adversary Complaint to all parties who have filed appearances and requests for notices, via ECF.

Dated: August 17, 2018      By:   /s/ Kathleen A. Davidson